UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| P.E. JIMERSON, on behalf of himself and a class of similarly situated persons,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>GENCO DISTRIBUTION SYSTEM, INC., a Pennsylvania corporation; and DOES 1 through 50, inclusive<br><br>　　　　　Defendants. | Case No: C 11-05157 SBA<br><br>**ORDER GRANTING MOTION TO REMAND; AND DENYING MOTION TO TRANSFER**<br><br>Docket 11, 14 |

On August 10, 2011, Plaintiff P.E. Jimerson ("Plaintiff") filed the instant wage and hour class action against Genco Distribution System, Inc. ("Defendant") in the Superior Court of the State of California, County of Alameda, alleging violations of various provisions of the California Labor Code and a violation of California Business & Professions Code §§ 17200 et seq. Compl., Dkt. 1. On October 20, 2011, Defendant removed the action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). Notice of Removal, Dkt. 1. The parties are presently before the Court on Plaintiff's motion to remand and Defendant's motion to transfer. Dkt. 11, 14. Defendant opposes the motion to remand, while Plaintiff opposes the motion to transfer. Dkt. 12, 16. Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby GRANTS Plaintiff's motion to remand and DENIES AS MOOT Defendant's motion to transfer, for the reasons set forth below. The Court, in its discretion, finds these matters suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. Factual Background

This is a wage and hour class action brought by Plaintiff on behalf of himself and all those similarly situated persons employed by Defendant within the State of California. First Am. Compl. ("FAC") ¶ 1.  According to Plaintiff, during the four years preceding the filing of the instant action through the present time (the "Class Period"), Defendant instituted and enforced company-wide policies of: (1) not compensating employees for all overtime hours worked; (2) requiring employees to forfeit earned and vested vacation wages through a "use it or lose it" vacation policy; (3) failing to provide employees with itemized wage statements; and (4) failing to pay employees all wages due upon termination of employment.  Id. ¶ 2.  Plaintiff alleges that these practices constitute unfair and unlawful business practices that are prohibited under California law.  Id.

Plaintiff is currently employed by Defendant as an Operations Supervisor in Fontana, California.  FAC ¶ 6.  As an Operations Supervisor, Plaintiff works along with other Operations Supervisors to make sure employees, or "teammates," are following corporate policies and completing their work.  Id. ¶ 12.  He is typically one of three Operations Supervisors on duty each shift.  Id.

Defendant is a Pennsylvania corporation and is the second largest third-party logistics company in North America, with more than 10,000 employees and warehouse facilities at multiple locations in California.  Id. ¶ 7.  Defendant provides supply chain solutions for warehousing and distribution of products to customers throughout the United States.  Id. ¶ 11.

Plaintiff alleges that during the Class Period he was "regularly scheduled to work four shifts per week, ten hours per shift."  FAC ¶ 17.  While "Plaintiff works 1.5 hours or more in addition to his regularly scheduled shift," Defendant "does not pay Plaintiff any overtime wages."  Id. ¶¶ 17-18.  "Plaintiff's paycheck stubs do not indicate the number of hours Plaintiff works during a pay period."  Id. ¶ 19.

According to Plaintiff, "[Defendant] has a 'use it or lose it' vacation policy that

requires employees to forfeit earned vacation wages." FAC ¶ 20. This policy states that " 'Teammates may carry over accrued vacation, but all vacation time carried over from one calendar year must be used by the end of the following year, or it will be forfeited.' " Id. ¶ 20. It also includes an illegal condition that "requires employee who are terminated during a 90 day introductory period to forfeit earned vacation wages." Id. ¶ 40.

The FAC proposes three classes. See FAC ¶¶ 21-23. The first class is the "Overtime Class," which is comprised of "the claims for failure to pay overtime wages, failure to provide itemized wage statements, and unfair competition alleged herein [brought] on behalf of [Plaintiff] and all similarly situated persons who are or have been employed by [Defendant] as Operations Supervisors, or in any similar position, in the State of California during the Class Period." Id. ¶ 21. The second class is the "Vacation Class," which is comprised of "the claims for illegal forfeiture of vacation wages and unfair competition alleged herein [brought] on behalf of [Plaintiff] and all similarly situated persons who are or have been employed by [Defendant] in the State of California during the Class Period." Id. ¶ 22. The third class is the "Waiting Time Penalty Subclass," which is comprised of "the claims for waiting time penalties [brought] on behalf of [Plaintiff] and all members of the Overtime Class and the Vacation Class whose employment with [Defendant] terminated during the Class Period." Id. ¶ 23.

### B.     Procedural History

On August 10, 2011, Plaintiff commenced the instant wage and hour class action against Defendants in the Alameda County Superior Court alleging five claims for relief. Compl. On September 29, 2011, a FAC was filed alleging six claims for relief: (1) failure to pay overtime wages in violation of California Labor Code § 1194; (2) illegal forfeiture of vacation wages in violation of California Labor Code § 227.3; (3) failure to provide itemized wage statements in violation of California Labor Code § 226; (4) waiting time penalties in violation of California Labor Code §§ 201, 202; (5) unfair competition in violation of California Business & Professions Code §§ 17200 et seq.; and (6) "unfair

competition" in violation of California Labor Code §§ 2698 et seq.[1]  See FAC.

On October 20, 2011, Defendant removed the instant action to this Court pursuant to CAFA.  Notice of Removal.  In the Notice of Removal, Defendant alleges that this action is removable because: (1) the class consists of over 100 individuals; (2) the amount in controversy exceeds $5,000,000 exclusive of interests and costs; and (3) the class action is one in which at least one class member is a citizen of a state different from that of Defendant.  Id.  In support of its Notice of Removal, Defendant submitted the declaration of Salvador Reyes ("Reyes"), a regional manager for Defendant with access to its payroll system.  Reyes Decl., Dkt. 3.

On November 28, 2011, Defendant filed a motion to transfer venue to the Central District of California under 28 U.S.C. § 1404.  Dkt. 11.  Plaintiff filed an opposition on December 12, 2011.  Dkt. 12.  On December 18, 2011, Plaintiff filed a motion to remand.  Dkt. 14.  Defendant filed a reply to the motion to transfer on December 19, 2011.  Dkt. 15.  On January 3, 2012, Defendant filed an opposition to the motion to remand.  Dkt. 16.  Plaintiff filed a reply on January 9, 2012.  Dkt. 18.

## II. DISCUSSION

### A. Legal Standard

A motion for remand is the proper procedure for challenging a removal.  Remand may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure.  See 28 U.S.C. § 1447(c).  "[R]emoval statutes are strictly construed against removal."  Luther v. Countrywide Home Loans Servicing, LP, 533 F.3d 1031, 1034 (9th Cir. 2008).  When a plaintiff institutes an action in state court, there is a presumption against removal.  Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 375 (9th Cir. 1997); Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992) (removal statutes are strictly construed such that any doubts are resolved in favor of remand).  "The presumption against

---

[1] Though Plaintiff characterizes this claim for relief as a claim for "unfair competition," the allegations in the FAC allege a claim under the Private Attorneys General Act ("PAGA"), Labor Code §§ 2698, et seq.

1  removal means that the defendant always has the burden of establishing that removal is
2  proper" Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009).  Any
3  doubts regarding the propriety of the removal favor remanding the case.  See Gaus, 980
4  F.2d at 566.
5       Under CAFA, district courts have original jurisdiction in any civil action where (1)
6  the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and
7  costs; (2) the aggregate number of proposed plaintiffs is 100 or greater; and (3) any
8  member of the plaintiff class is a citizen of a State different from any defendant.  28 U.S.C.
9  § 1332(d)(2); see also Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 997 (9th Cir.
10 2007); 28 U.S.C. § 1332(d).  CAFA also provides that "the claims of the individual class
11 members shall be aggregated to determine whether the matter in controversy exceeds the
12 sum or value of $5,000,000."  28 U.S.C. § 1332(d)(6).  Because CAFA permits federal
13 court jurisdiction where only minimal, rather than complete, diversity exists, "[s]ection
14 1332(d) thus abandons the complete diversity rule for covered class actions."  Abrego
15 Abrego v. The Dow Chemical Co., 443 F.3d 676, 680 (9th Cir. 2006).  The Ninth Circuit
16 has explained that CAFA did not disturb the traditional allocation of the burden of
17 establishing removal jurisdiction, holding "that under CAFA the burden of establishing
18 removal jurisdiction remains, as before, on the proponent of federal jurisdiction."  Id. at
19 685.
20       Where, as here, the plaintiff fails to plead a specific amount of damages, the
21 removing defendant "must prove by a preponderance of the evidence that the amount in
22 controversy requirement has been met."  Abrego, 443 F.3d at 683.  "Under this burden, the
23 defendant must provide evidence establishing that it is 'more likely than not' that the
24 amount in controversy exceeds that amount."  Sanchez v. Monumental Life Ins. Co., 102
25 F.3d 398, 404 (9th Cir. 1996); Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th
26 Cir. 2007).
27       A court "cannot base [its] jurisdiction on [a] Defendant's speculation and
28 conjecture."  Lowdermilk, 479 F.3d at 1002.  Nor can removal be based simply upon

conclusory allegations.  Abrego, 443 F.3d at 689.  Rather, a defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum.  Abrego, 443 F.3d at 689; Gaus, 980 F.2d at 567.  In determining whether the amount in controversy exceeds the statutory minimum (which in this case is $5,000,000), Courts are permitted to consider facts in the removal petition and "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," such as affidavits or declarations.  Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004).  If the defendant is unable to prove by a preponderance of evidence that the amount in controversy has been met, the case must be remanded back to state court.  28 U.S.C. § 1447(c).

### B. Motion to Remand

Plaintiff contends that this Court lacks subject matter jurisdiction under CAFA because Defendant has failed to show that the amount in controversy exceeds $5,000,000 by a preponderance of the evidence.  Pl.'s Mtn. at 1.  According to Plaintiff, the only information before the Court to support jurisdiction are Defendant's "baseless assumptions" and "fundamentally flawed" calculations that are nothing more than speculation and conjecture.  Id. at 1, 3-4.

In response, Defendant argues that CAFA's jurisdictional minimum amount in controversy is clearly satisfied.  Def.'s Opp. at 1.  In support of its position, Defendant has provided damages estimates regarding the amount in controversy, which it argues are conservative estimates that far exceed the required amount in controversy.  Id. at 10-17; see also Notice of Removal ¶ 8.  According to Defendant, the total amount in controversy, including attorneys' fees is $8,987,186.72.  Def.'s Opp. at 1; Notice of Removal ¶ 9.  In arriving at this figure, Defendant relies on the "clear allegations of the FAC" and the "detailed" one-page declarations of Reyes.[2]  Def.'s Opp. at 6-7.  The Court will address

---

[2] Reyes submitted a declaration in support of the Notice of Removal and a supplemental declaration in support of Defendant's opposition to the instant motion.  See Reyes Decl., Dkt. 3, Reyes Supp. Decl., Dkt. 17.

Defendant's damages estimates in turn below.[3]

### 1. Failure to Pay Overtime Wages

Defendant asserts that Plaintiff's claim for unpaid overtime in violation of California Labor Code § 1194 is worth $1,229,878.72. See Def.'s Opp. at 11; Notice of Removal ¶ 8(A). Defendant calculated this figure as follows:

> The Complaint alleges that Plaintiff regularly works four ten-hour scheduled shifts per week, and works an additional 1.5 hours daily beyond his regular shift. This amounts to a total of 3.5 daily overtime hours or 14 weekly overtime hours. Plaintiff claims that all of the other class members were subjected to 'uniform policies and practices,' that they all worked a similar amount of unpaid overtime, and that his claim is typical of the rest of the class. Therefore, it is appropriate to utilize the complaint's specific allegations as the number of unpaid hours of overtime when calculating the overall amount in controversy on this claim.
>
> As of the date of removal, there were 31 Operations Supervisors in California who cumulatively worked 2,476 workweeks. These employees earned an average hourly wage of approximately $23.65, which yields an average overtime rate of $35.48. Based on the Complaint's allegation of 14 hours of unpaid overtime per week per employee, the amount in controversy calculation on this claim would be: 14 hours x 2,476 employee work weeks x $35.48 OT rate, which equals: $1,229,878.72.

Def.'s Opp. at 11 (citing Reyes Decl. ¶ 3) (citations omitted); see also Notice of Removal ¶ 8(A).[4]

Although Plaintiff does not challenge Defendant's calculation, Pl.'s Opp. at 3, n. 1, the Court cannot credit the calculation because Defendant's damages estimation is based on

---

[3] As an initial matter, the Court rejects Defendant's suggestion that removal is proper because the Plaintiff has not denied that the amount in controversy exceeds $5,000,000 or submitted evidence to dispute Defendants' estimates. It is well established that the Defendant bears the burden of establishing removal jurisdiction. See Abrego, 443 F.3d at 685 ("We . . . hold that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction.").

[4] In its opposition brief, Defendant notes that the calculations in its removal papers were based on the data through September 15, 2011. Def.'s Opp. at 11. However, it requests that the Court consider revised damages calculations that take into account the damages incurred after the filing of the Notice of Removal. Id. at 11-17. The Court declines to do so. In determining whether subject matter jurisdiction exists, courts consider the "facts presented in the removal petition as well as any 'summary-judgment-type evidence *relevant to the amount in controversy at the time of removal.*' " Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003) (emphasis added). Defendant does not cite any authority demonstrating that it is proper for the Court to consider the revised damages calculations. Moreover, even if the Court were to consider the revised calculations, they do not alter the analysis set forth below.

an unsupported assumption. Defendant's damages estimation improperly assumes that all thirty-one members of the Overtime Class (i.e., the Operation Supervisors) worked the same amount of overtime that Plaintiff alleges he worked. In arriving at its damages estimation, Defendant relied on Plaintiff's allegation that he worked four ten-hour shifts per week, plus an additional 1.5 hours per shift, FAC ¶ 17, and assume that every member of the Overtime Class worked fourteen weekly hours of overtime. While Plaintiff alleges that his claims are typical of the Overtime Class as a whole, id. ¶ 26, and that the Overtime Class members were subject to the same policies and practices and consistently worked in excess of eight hours in a workday and/or in excess of 40 hours in a workweek throughout the Class period, id. ¶¶ 26, 32-33, this does not provide a basis to assume that every Overtime Class member worked any particular number of overtime hours, much less that he or she worked the same number of overtime hours every workday as Plaintiff did.[5] See Martinez v. Morgan Stanley & Co., 2010 WL 3123175, *5 (S.D. Cal. 2010).

Without any evidence to support Defendant's assumption, the Court finds that Defendant's calculations are insufficient to carry its burden to establish by the preponderance of the evidence the amount in controversy with respect to this claim. See Lowdermilk, 479 F.3d at 1002 (a court "cannot base [its] jurisdiction on [a] Defendant's speculation and conjecture"). Accordingly, the Court will not consider Defendant's estimation of damages for unpaid overtime in determining the amount in controversy in this case.

### 2. Illegal Forfeiture of Vacation Wages

Defendant asserts that Plaintiff's claim for illegal forfeiture of vacation wages in violation of California Labor Code § 227.3 is worth $484,902.00. See Def.'s Opp. at 12; Notice of Removal ¶ 8(B). Defendant calculated this figure as follows:

> As of the date of removal, the putative class of all of [Defendant's] employees in California is 881 individuals. These employees earned an average hourly wage of approximately $13.76. Based upon a conservative estimate of 1

---

[5] Contrary to Defendant's contention, the FAC does not allege that members of the Overtime Class "all worked a similar amount of unpaid overtime."

> week of vacation (40 hours) allegedly forfeited per employee, the amount in controversy calculation on this claim would be: 881 employees x 40 hours x $13.76 hourly wage, which equals: $484,902.00.

Def.'s Opp. at 12 (citing Reyes Decl. ¶ 4) (citations omitted); see also Notice of Removal ¶ 8(B).

Plaintiff contends that Defendant's damage calculations are flawed because they do not take into account the amount of time each employee was employed, which affects whether accrued vacation was carried over, and thus whether an employee was subject to the unlawful vacation forfeiture policy. Pl.'s Mtn. at 5-6. Under the challenged policy, an employee "may carry over accrued vacation, but all vacation time carried over from one calendar year must be used by the end of the following year, or it will be forfeited." FAC ¶ 20. Plaintiff argues that Defendant's proffered estimation of damages is flawed because it is based on the assumption that all 881 employees worked over one year and forfeited an entire week of vacation that they carried over from the previous year. Pl.'s Mtn. at 5-6. Plaintiff contends that "[t]his overstatement is particularly egregious since Defendant's evidence demonstrates a high employee turnover rate - more that 50%. Id., citing Reyes Decl. ¶ 5 ("[D]uring the time period from August 10, 2008 through September 15, 2011, 456 non-exempt employees of [Defendant] terminated their employment."). According to Plaintiff, Defendant's calculation does not meet the preponderance of the evidence standard because it is not based on any evidence, nor is it derived from the allegations in the FAC. Id. at 6.

In response, Defendant, without citation to allegations in the FAC, argues that its estimate of one week of forfeited vacation per individual is appropriate because the FAC alleges that all members of the "Vacation Class" forfeited accrued vacation. Def.'s Opp. at 12. The Court rejects this argument. Defendant's calculations require the Court to make assumptions that lack evidentiary support. Defendant has not cited any evidence for its assumptions that all 881 class members worked more than one year and that each forfeited one week of vacation. Nor does the FAC allege facts that support these assumptions. Plaintiff alleges that employees were subject to an unlawful "use it or lose it" vacation

policy, but Plaintiff does not allege facts to support the assumption that every employee that worked for Defendant in California during the relevant four-year period is entitled to compensation for forfeiture of accrued vacation. Defendant, for its part, did not offer a persuasive explanation, let alone "summary judgment-type evidence," demonstrating that it is valid to assume that each of the 881 employees that worked for Defendant during the relevant period forfeited one week of accrued vacation time when employees on average receive only 2.4 weeks of vacation time per year. See Reyes Supp. Decl. ¶ 3.

In addition, Defendant did not explain how its assumptions account for the high employee turnover rate, particularly since the forfeiture policy does not apply to employees that work for less than a year.[6] Instead, Defendant tacitly concedes that its assumptions with respect to this claim are unsupported by failing to directly address Plaintiff's argument that it overstated the amount in controversy. Without explanation, Defendant states: "assuming a 50% discount in controversy in light of Plaintiff's objections, the amount in controversy would be: $287,002.80." Def.'s Opp. at 12. This alternative, speculative assumption is also unsupported by any evidence. As such, it is insufficient to establish the amount in controversy with respect to this claim.

Accordingly, because Defendant's calculations are based on unsupported assumptions, the Court will not consider Defendant's estimation of damages for unpaid overtime in determining the amount in controversy in this case. See Lowdermilk, 479 F.3d at 1002 (a court "cannot base [its] jurisdiction on [a] Defendant's speculation and conjecture").

### 3. Failure to Provide Itemized Wage Statements

Defendant asserts that Plaintiff's claim for failure to provide itemized wage statements in violation of California Labor Code § 226 is worth $72,850.00. See Def.'s Opp. at 13; Notice of Removal ¶ 8(C). Defendant calculated this figure as follows:

---

[6] The Court notes that Defendant failed to explain why it did not provide evidence as to how many of its California employees were terminated during the entire four-year period prior to the filing of the complaint. In his declaration, Reyes only attests to how many employees were terminated in the three years prior to the filing of the complaint. See Reyes Decl. ¶ 5.

> As to the putative sub-class of Operations Supervisors, the Complaint alleges that [Defendant] failed to provide class members with proper itemized wage statements in violation of California Labor Code Section 226. The penalty specified under Labor Code Section 226(e) is $50.00 for the initial violation as to each employee, and $100.00 for each further violation as to each employee, up to a maximum penalty of $4,000.00 per employee. Putative class members were paid biweekly. At the time of removal, [Defendant] calculated the amount in controversy as follows: (1 pay period x $50.00 penalty + 23 pay periods x $100.00 penalty) x 31 employees, which equals: $72,850.00.

Def.'s Opp. at 13 (citing Reyes Decl. ¶ 3) (citations omitted); see also Notice of Removal ¶ 8(C).

Plaintiff contends that Defendant's calculation is based on the unfounded assumption that each and every member of the Overtime Class worked during the relevant statutory period, i.e., the one-year preceding the filing of the complaint. Pl.'s Mtn. at 6. According to Plaintiff, there is no evidence to support this assumption, which is "highly suspect in light of Defendant's 50% employee turnover rate." Id. In response, Defendant, again, tacitly concedes that the calculation is speculative as it provides no response except to propose that the Court apply a 50% reduction in the amount calculated. Def.'s Opp. at 13.

Defendant did not cite to any allegations in the FAC or "summary judgment-type evidence" to support the assumption that all of Operation Supervisors worked during the one-year preceding the filing of the complaint. Nor did Defendants offer any factual basis for the Court to assume that a 50% reduction in the damages calculation is appropriate. Exchanging one unsupported estimate for another does not establish the amount in controversy with respect to this claim, particularly since Defendant had the ability to produce evidence that could have formed the basis for a more precise estimate. Indeed, given that Defendant has access to the Overtime Class members' employment records, it could easily have proffered an accurate figure with respect to how many Operation Supervisors worked in the year preceding the filing of the complaint. Thus, because Defendant's damages estimate is the product of unsupported speculation, the Court declines to consider it in determining the total amount in controversy in this action. See Lowdermilk, 479 F.3d at 1002 (a court "cannot base [its] jurisdiction on [a] Defendant's

speculation and conjecture").

####        4.        Waiting Time Penalties

Defendant asserts that Plaintiff's claim for waiting time penalties under California Labor Code § 203 is worth $1,767,456.00.  See Def.'s Opp. at 14; Notice of Removal ¶ 8(D).  Defendant calculated this figure as follows:

> During the time period from August 10, 2008 through the present, 456 non-exempt employees of [Defendant] in California terminated their employment. . . . These individuals earned an average hourly wage of $16.15.  The amount in controversy calculation on this claim would therefore be: $16.15 average hourly rate x 8 hours x 30 days x 456 terminated employees, which equals: $1,767,456.00.

Def.'s Opp. at 13-14 (citing Reyes Decl. ¶ 5) (citations omitted); see also Notice of Removal ¶ 8(D).

Plaintiff contends that Defendant overstated the amount in controversy by including each and every employee terminated during the Class Period.  Pl.'s Mtn. at 7.  According to Plaintiff, Defendant assumes, without evidentiary support, that each and every terminated employee was owed overtime or vacation wages upon termination.  Id.  In response, Defendant contends that "the FAC clearly alleges that all members of both the Overtime Class (FAC ¶¶ 32, 33) and the Vacation Class (FAC ¶ 41) have, in fact, suffered damages."  Def.'s Opp. at 14.  According to Defendant, Plaintiff alleges that the Waiting Time Subclass includes all members of the other classes "whose employment with [Defendant] terminated during the Class Period," citing id. ¶ 23.  Id.  Further, Defendant asserts that the FAC alleges that each member of this subclass was not provided with final wages upon termination, citing id. ¶ 50.  Id.  As such, Defendant claims that "it is indisputable that damages should be calculated as to all members of the Waiting Time Subclass."  Id.

Defendant's assumptions in support of its proffered damages estimate find no evidentiary support in the record.  There is no evidence before the Court to support Defendant's assumption that all 456 individuals that were terminated during the period from "August 10, 2008 through the present" were part of either the Overtime Class (which only consists of thirty-one members) or the Vacation Class.  The FAC does not allege that every

1  employee terminated during the Class Period was improperly denied overtime or vacation
2  wages.  Nor did Defendant adduce "summary judgment-type evidence" to support this
3  assumption.  There is no evidence showing that any Overtime Class member was
4  terminated within the relevant period.  Given Defendants access to employee records,
5  Defendant could have easily shown how many, if any, of the Overtime Class members were
6  terminated during the relevant period.

7  Defendant also failed to adduce evidence in support of its assumption that the
8  terminated employees were subject to the vacation forfeiture policy.  As discussed above,
9  this policy only applies to employees that worked more than a year and did not use all of
10 their accrued vacation time within the previous year.  Given Defendant's high employee
11 turnover rate and the terms of the forfeiture policy, Defendant improperly assumes, without
12 citation to evidence, that all, or at least a substantial portion, of the 456 terminated
13 employees are part of the Vacation Class.  Accordingly, because Defendant's unsupported
14 assumptions result in a speculative damages estimate, the Court declines to include any
15 amount of "waiting time" penalties in determining the total amount in controversy in this
16 action.  See Lowdermilk, 479 F.3d at 1002 (a court "cannot base [its] jurisdiction on [a]
17 Defendant's speculation and conjecture").

### 5. PAGA Penalties

19 Defendant asserts that Plaintiff's claim for PAGA penalties under California Labor
20 Code §§ 2698 et seq. is worth $4,432,100.00.  See Def.'s Opp. at 14-15; Notice of Removal
21 ¶ 8(F).  Defendant calculated this figure as follows:

> PAGA provides for penalties of $100.00 for an initial violation in a pay
> period and $200.00 per pay period for each later violation, with a one year
> limitations period.  Each of the putative class members is alleged to be
> entitled to recovery of PAGA penalties for the same violations alleged
> elsewhere in the Complaint.
>
> For Removal, [Defendant] calculated the amount in controversy on the
> PAGA claim as follows:
>
> As to the class of all California employees on the L.C. § 227.3 claim: (881
> employees x $100.00 initial penalty) + (881 employees x $200.00 penalty x
> 23 pay periods) = $4,140,700.00.

> As to the subclass of Operations Supervisors on the L.C. § 1194 claim: (31 employees x $100.00 initial penalty) + (31 employees x $200.00 penalty x 23 pay periods) = $145,700.00.
>
> As to the subclass of Operations Supervisors and similarly situated employees on the L.C. § 226(a) claim: (31 employees x $100.00 initial penalty) + (31 employees x $200.00 penalty x 23 pay periods) = $145,700.00.

Def.'s Opp. at 14-15 (citations omitted); see also Notice of Removal ¶ 8(E).

Plaintiff contends that Defendant's calculation is flawed because it is based on improper assumptions, including the improper assumption that each and every class member is entitled to the maximum penalties under PAGA, and that all 881 persons employed by Defendant in California over the past four years worked in the one-year statutory period prior to the commencement of this action. See Pl.'s Mtn. at 7-8. In response, Defendant merely argues that its calculation is correct because it accounts for "what the Plaintiff *could* recover, if he prevails on all his claims. However, even if one were to assume a full 50% reduction in the amount in controversy, this would still amount to $2,970,500.00." Def.'s Opp. at 16 (emphasis in original).

Defendant's damages calculation is insufficient. As discussed above, the Court did not credit Defendant's calculations regarding Plaintiff's claims for failure to pay overtime wages, illegal forfeiture of vacation wages, and failure to provide wage statements. Because Defendant's PAGA penalties damages estimate is predicated on calculations the Court has found unsupported, the Court declines to include any amount of PAGA penalties in determining the total amount in controversy in this action.

### 6. Attorneys' Fees

Defendant estimates attorneys' fees to be $1,000,000, calculated as 20% of $5,000,000. Def.'s Opp. at 16; see also Notice of Removal ¶ 8(F). However, given that Defendant's attorneys' fee calculation is based on unsupported and speculative damages calculations, Defendant's attorneys' fee calculation cannot be credited. See Lowdermilk, 479 F.3d at 1002 (a court "cannot base [its] jurisdiction on [a] Defendant's speculation and conjecture"). Accordingly, the Court declines to consider Defendant's calculation regarding attorneys' fees in determining the amount in controversy.

### 7. Summary

Because Defendant's damages calculations are based on speculation and assumptions that lack evidentiary support, the Court concludes that Defendant has failed to sustain its burden to establish by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. Accordingly, CAFA provides no basis for exercising jurisdiction in this case. Therefore, Plaintiff's motion to remand is GRANTED.

### C. Motion to Transfer

Because the Court finds that it lacks subject matter jurisdiction, Defendant's motion to transfer is DENIED AS MOOT. See Potter v. Hughes, 546 F.3d 1051, 1061 (9th Cir. 2008) ("[F]ederal courts normally must resolve questions of subject matter jurisdiction before reaching other threshold issues.")

## III. CONCLUSION

For the stated above, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion to remand is GRANTED. The instant action is REMANDED to the Superior Court of the State of California, County of Alameda.

2. Defendant's motion to transfer is DENIED AS MOOT.

3. The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: September 28, 2012

                                         SAUNDRA BROWN ARMSTRONG
                                         United States District Judge